**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, #15180
Washington, DC 20003

COLOMBO HURD PL
301 E. Pine Street #450
Orlando, Florida 32801

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY
245 Murray Lane SW
Washington, DC 20528

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES
5900 Capital Gateway Dr.
Camp Springs, MD 20588

U.S. DEPARTMENT OF STATE
2201 C Street NW
Washington, DC 20520

U.S. DEPARTMENT OF COMMERCE
1401 Constitution Ave., NW
Washington, DC 20230

*Defendants*.

Civil Action No. 26-cv-01230

**COMPLAINT**

1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Plaintiffs Democracy Defenders Fund ("DDF") and Colombo Hurd, PL ("Colombo Hurd")

(collectively, "Plaintiffs") seek injunctive and other appropriate relief requiring the timely

processing and release of agency records requested by Plaintiffs from Defendants the United States

Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), United States Department of State ("DOS"), and United States Department of Commerce ("DOC") (collectively, "Defendants"). Specifically, Plaintiffs seek information relating to the Gold Card Visa Program, which was created as directed by Executive Order 14351, 90 Fed. Reg. 46,031 (Sept. 19, 2025).

2.      The requested records include information of great national significance, including the Gold Card Visa Program's potential impact on qualified applicants for employment-based visas and thus on the ability of U.S. employers to hire the most highly qualified candidates in the world.

3.      On January 6, 2026, Plaintiff Colombo Hurd filed a FOIA request with USCIS seeking information on the Gold Card Visa Program in order to inform the public about actual and alleged government activity.

4.      On February 10, 2026, Plaintiff DDF filed two FOIA requests seeking information on the Gold Card Visa Program in order to inform the public about actual and alleged government activity. One request was sent to DHS, DOS, and USCIS; the other was sent to DOC.

5.      On February 11, 2026, Plaintiff DDF filed a subsequent FOIA request with DHS and USCIS seeking information on the development and implementation of the Gold Card Visa Program in order to inform the public about actual and alleged government activity.

6.      To date, Defendants have not provided any information responsive to Plaintiffs' requests or cited any statutory exemption justifying the withholding of any responsive information.

7.      Under FOIA, Plaintiffs are entitled to review all requested records that are not exempt from FOIA's disclosure requirements.

8.      The purpose of FOIA is "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S. Rep. No. 813, 89th

Cong., 1st Sess. 3 (1965). A goal of the statute is to ensure an "informed electorate," which was seen as "vital to the proper operation of a democracy." *Id.* at 2–3. Defendants' inaction is frustrating that statutory purpose.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii) and 28 U.S.C. §§ 1331, 2201, and 2202.

10.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia) and 28 U.S.C. § 1391(e).

11.    Because Defendants have failed to comply with the applicable time-limit provisions of FOIA, Plaintiffs are deemed to have exhausted their administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and are now entitled to judicial review.

12.    This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

13.    Plaintiff DDF is a nonpartisan, non-profit section 501(c)(3) organization committed to defending and strengthening democracy while ensuring that all Americans can freely exercise their fundamental civil rights by defending the rule of law, fighting corruption, and protecting elections. DDF strategically uses FOIA and public records requests to gather and analyze information to shine a light on abuses of power. DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about information of national significance. The organization is incorporated under the laws of the District of Columbia.

3

14.      Plaintiff Colombo & Hurd, PL is a law firm that represents clients in complex immigration and administrative law matters, including matters involving federal agency action and access to government records. The firm is organized under the laws of Florida and maintains its principal place of business in Orlando, Florida.

15.      Defendant United States Citizenship and Immigration Services is an "agency" of the federal government within the meaning of 5 U.S.C. § 552(f)(1). USCIS is headquartered in Camp Springs, Maryland. USCIS has possession, custody, and control of records that Plaintiffs seek.

16.      Defendant United States Department of Commerce is an "agency" of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DOC is headquartered in Washington, D.C. DOC has possession, custody, and control of records that Plaintiff DDF seeks.

17.      Defendant United States Department of Homeland Security is an "agency" of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C. DHS has possession, custody, and control of records that Plaintiff DDF seeks.

18.      Defendant United States Department of State is an "agency" of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DOS is headquartered in Washington, D.C. DOS has possession, custody, and control of records that Plaintiff DDF seeks.

## FACTS

### *The Gold Card Visa Program*

19.      In February 2025, President Trump first began publicly discussing the prospect of issuing a "golden visa" for wealthy non-citizens to purchase residency in the United States and eventually become U.S. citizens. The initial proposed plan was to charge $5 million for the visas, and President Trump was explicit that he would not be seeking congressional approval for this new

policy.[1] An Oval Office briefing was held on the subject on February 25, 2025, in which Secretary Lutnick stated the initiative would be launched in the next two weeks.

20.     On a March 20, 2025, episode of the "*All-In*" podcast, Secretary Howard Lutnick explained that he had been ordered by President Trump to create a plan to issue "gold card" visas. He stated that "Elon is building in the software right now, right, and then out it goes. And by the way, yesterday, I sold a thousand."[2] One of the hosts of the *All-In* podcast, Chamath Palihapitiya, relayed a conversation he said he had with Musk about the project: "One of the most difficult parts of it, is, it turns out, all of the CBP infrastructure to do all these checks, it's like a lot of COBOL mainframes and the amount of technology that has to get rewritten."[3] Secretary Lutnick again stated that the initiative would be launched "about two weeks from today."[4]

21.     On May 7, 2025, it was reported that the Department of Government Efficiency ("DOGE") was involved in the process of "rolling out digital infrastructure" for the new immigration program in coordination with officials from Customs & Border Patrol, USCIS, DOS, and other agencies, and was being overseen by two high-profile DOGE associates, Marko Elez and Edward Coristine.[5]

22.     On September 19, 2025, President Trump issued an Executive Order titled "The Gold Card." Executive Order 14,351, 90 Fed. Reg. 46,031 (Sept. 19, 2025) (the "E.O."). The E.O.

---

[1] *See* David J. Bier, *Trump's Gold Card Plan Has Benefits But Legal and Practical Obstacles*, CATO AT LIBERTY (Feb. 26, 2025), https://www.cato.org/blog/trumps-gold-card-plan-has-benefits-legal-practical-obstacles.

[2] *Howard Lutnick | All-In DC*, at 1:10:34—1:13:00 (Mar. 20, 2025), https://open.spotify.com/episode/1DACI9sBywPc4mRuwkTFju.

[3] Id.

[4] Id.

[5] Louise Matsakis & Zoë Schiffer, *A 'Trump Card Visa' Is Already Showing Up in Immigration Forms*, WIRED (May 7, 2025), https://www.wired.com/story/doge-trump-gold-visa-program-immigration/.

ordered the Secretary of Commerce, "in coordination with the Secretary of State and the Secretary of Homeland Security" to create and implement a Gold Card Visa Program. *Id*. § 2.

23.    The E.O. requires that individuals who pay $1 million to Defendant DOC or on whose behalf a corporation pays $2 million[6] be considered eligible for EB-1A and EB-2 visas as individuals "of exceptional business ability and national benefit," and for a National Interest Waiver ("NIW") under 8 U.S.C. § 1153(b)(2)(B). E.O. 14,351 § 2(b).

24.    Pursuant to the E.O., Defendants established and implemented the Gold Card Visa Program, whereby a payment to the DOC is treated as evidence of statutory eligibility for EB-1A and EB-2 visas and an NIW. The Program also purports to guarantee expedited processing of Gold Card applications.

25.    On or about December 10, 2025, Defendants announced that DOC was accepting payments, and that DHS was accepting applications under the Gold Card Visa Program through a jointly administered website ("The Trump Gold Card is Here. Unlock life in America."). *See* https://trumpcard.gov/.

26.    On December 11, 2025, Defendant DOC posted a blog stating, in its entirety, "'Our immigration system should put Americans first. That's exactly why the Trump Gold Card is a major win for our country.' Secretary Howard Lutnick."[7]

27.    The official U.S. Government website "trumpcard.gov" also provides information about a forthcoming "Trump Platinum Card" which explains that it "will allow individual

---

[6] Known as the "Trump Corporate Gold Card." TRUMPCARD.GOV (last visited Mar. 31, 2026), https://www.trumpcard.gov/ (under section "What is the Trump Corporate Gold Card") ("The Trump Corporate Gold Card is subject to a small, 1% annual maintenance fee and a 5% transfer fee.").

[7] DOC, *The Trump Gold Card: Unlock life in America*, Blog (Dec. 11, 2025), https://www.commerce.gov/news/blog/tweets/trump-gold-card-unlock-life-america.

applicants to reside in the United States for up to 270 days per year without being subject to tax on non-U.S. income. No more travel visas." The website's "Essential Information and Guidance" section also asks and answers the question: "Why is there a waiting list for the Trump Platinum Card and why should applicants apply now?" The answer: "The Trump Platinum Card has not yet been released. Applicants should join the waitlist now to ensure that they can be processed immediately after the Trump Platinum Card Program goes live! There is no assurance that the Platinum Card contribution will remain at $5 million, so you should join the waitlist now." The official contact email for the website is goldcard@doc.gov.

28.    The website also features the following photograph representing the Gold Card, which has also been used in official communications about the program and in the Oval Office event announcing it:



29.    USCIS created the new Form I-140G, Immigrant Petition for the Gold Card Program. The only listed condition for filing Form I-140G is that the applicant "establish that you

have sufficient funds to make the required unrestricted gift to the Department of Commerce" with any funds "obtained through lawful means."[8] There is also a filing fee of $15,000 per person (principal beneficiary, spouse, child(ren), as applicable).

30.    Embassies and Consulates of the United States operated by DOS list the "Trump Gold Card" as "a visa based upon an individual's ability to provide a substantial benefit to the United States" and advertise the ability to "UNLOCK LIFE IN AMERICA." The following image is captured from the website of the U.S. Embassy & Consulates in Canada[9]:



31.    On December 19, 2025, eight days after its announcement, President Trump publicly stated that over $1 billion worth of Gold Cards had been "sold."[10] This sum would be consistent with the 1,000 visas Secretary Lutnick claimed to have sold on the *All-In* podcast in March 2025.

32.    The Gold Card Visa Program represents a significant change in the administration of the statutorily-defined employment-based visa pathways. However, Defendants have not released public information explaining how Gold Card applications are processed or how the program impacts qualified applicants for these two types of visas created by Congress.

---

[8] USCIS, *Instructions for Immigrant Petition for the Gold Card Program*, OMB No. 1615-0167 (Nov. 19, 2025), *available at* https://www.uscis.gov/i-140g.
[9] *See* U.S. Visa Services, https://ca.usembassy.gov/visas/ (last visited Mar. 31, 2026).
[10] *Trump claims over $1 billion in immigration "gold cards" have been sold*, SCRIPPS NEWS (Dec. 19, 2025), https://www.scrippsnews.com/politics/immigration/trump-claims-over-1-billion-in-immigration-gold-cards-have-been-sold.

33.     Plaintiffs filed FOIA requests to obtain information that will allow them to shed light on the creation and implementation of the Gold Card Visa Program and its impact on the public.

### *Colombo Hurd's FOIA Request to USCIS: COW2026000979*

34.     On January 6, 2026, Colombo Hurd filed a FOIA request with USCIS seeking to uncover the requested information in furtherance of the public interest. Specifically, Colombo Hurd requested the following records: "Agency policies, communications, and memos for adjudicators for Gold Card (Form I-140G) applications."

35.     Colombo Hurd submitted its FOIA request seeking records concerning the Gold Card program to obtain information necessary to advise clients, evaluate potential legal claims, and inform the public about a matter of significant national importance.

36.     Defendant USCIS processes all FOIA requests through its "Freedom of Information Act (FOIA) Immigration Records System (FIRST)." This system also provides information about requests to the person who submits them on demand.

37.     The USCIS FIRST platform assigned this request the index number COW2026000979. The estimated date of completion is listed as February 12, 2026.

38.     USCIS's estimated date of completion of February 12, 2026, has passed. To date, USCIS has failed to provide any records responsive to or otherwise make a determination on Colombo Hurd's FOIA request COW2026000979.

39.     To date, USCIS has taken no action on Plaintiff Colombo Hurd's FOIA request since assigning its index number. The FIRST platform indicates that the request has been submitted, but has not proceeded to "in process," which it explains means the agency has not yet

begun "performing activities such as reviewing the request, searching for records, and preparing records for release," as depicted in the below screenshot:

**Received**
The request was received by USCIS.

**In Process**
USCIS is performing activities such as reviewing the request, searching for records, and preparing records for release.

**Completed**
USCIS completed processing the request, and a letter was sent to the requester explaining the actions taken

40.     To date, USCIS has failed to provide any response to Colombo Hurd's request.

### *DDF's FOIA Request to DOC: DOC-OS-2026-001004*

41.     On February 10, 2026, DDF filed a FOIA request with Defendant DOC, requesting the following records:

1. All documents describing in any way the number of gifts received under the Gold Card Visa Program or the amount of such gifts, both singly and in the aggregate.
2. All documents that identify or quantify any gifts or payments received or recorded in connection with the Gold Card Visa Program.
3. All documents supporting or in any way related to the statement of Secretary Lutnick that he "sold" 1,000 Gold Cards in a single day. See https://www.youtube.com/watch?v=182ckTL2KBA&t=4286s.
4. All documents supporting or in any way related to President Trump's statement that over $1 billion worth of Gold Cards have been "sold." See Trump claims over $1 billion in immigration "gold cards" have been sold, SCRIPPS NEWS (Dec. 19, 2025), https://www.scrippsnews.com/politics/immigration/trump-claims-over-1-billion-in-immigration-gold-cards-have-been-sold.
5. All documents containing or describing any form of compilation of data related to the Gold Card Visa Program.
6. All documents containing or describing public communications about the Gold Card Visa Program.
7. All documents containing or describing any communications among or between officers or employees of the Department of Homeland Security, the United

States Citizenship and Immigration Services, the Department of State, or the Department of Commerce concerning the Gold Card Visa Program.

8. All documents containing or evidencing any communications involving Secretary Lutnick about the Gold Card Visa Program that are to or from individuals not employed by or officers of the United States.

9. All documents describing any plans to or consideration of ending the EB-5 program and replacing it with the Gold Card Visa Program.

10. All documents containing or describing communications with any individual or entity not an officer or employee of the United States concerning the Gold Card Visa Program, but excluding application materials from individual applicants and subsequent communications with those applicants.

11. All documents containing or describing any communications with or about a donor or potential donor to any political campaign, political action committee, or any other organization or fund associated with President Trump, members of President Trump's family, or the Republican Party that relate to the Gold Card Visa Program.

12. All documents containing or describing any communications concerning Nick[i] Minaj and the Gold Card Visa Program.

42.    DDF also requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 15 C.F.R. § 4.11.

43.    DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOC's implementing regulations at 15 C.F.R. § 4.6, both of which require DOC to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Pursuant to FOIA and DOC regulatory requirements, 5 U.S.C. § 552(a)(6)(E)(vi) and 15 C.F.R. § 4.6(f)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing.

***Defendant DOC Failed to Timely Respond to DDF's FOIA Request DOC-OS-2026-001004***

44.    On February 13, 2026, DOC emailed DDF a letter acknowledging receipt of DDF's request, providing contact information for the person responsible for responding to DDF's FOIA request, and assigning the tracking number DOC-OS-2026-001004 (the "February 13 Letter").

11

45. In the February 13 Letter, DOC denied DDF's request for expedited processing, acknowledged that DDF had sought a waiver of fees, but explained that "this Office will make a determination regarding a fee waiver at a later date."

46. DOC also informed DDF that it would not be able to produce the requested records within 20 days and granted itself a ten-day extension due to unusual circumstances. Specifically, the letter stated that the U.S. Department of Commerce's Office of Privacy and Open Government:

> will not be able to respond within the 20 days provided by the statute due to "unusual circumstances." See 5 U.S.C. § 552(a)(6)(B)(i)-(iii). In this instance, the "unusual circumstances" include the need to search for and collect the requested records agency records [sic] from field facilities or other establishments that are separate from this Office. This Office will process your request as quickly as possible.

47. DOC's letter did not set forth the date on which a determination was expected to be dispatched.

48. On March 13, 2026, DDF sent a message to the email address provided in the February 13 Letter. DDF requested an estimated date by which DOC would provide a substantive response to the FOIA request. In addition, DDF requested that DOC call DDF's representative to discuss the request and provided a phone number. DDF never received a call from DOC.

49. On March 16, 2026, DOC responded via email to DDF and provided an estimated date of completion of March 2, 2027, 386 calendar days and 261 working days from the date of DDF's FOIA request.

50.     This date was not calculated with reference to or consideration of any part of DDF's FOIA request and cited only the average processing times in DOC's FOIA Annual Report for Fiscal Year 2025.[11]

51.     On March 17, 2026, DDF replied that the projected timeline is "contrary to law and not acceptable to [DDF]." DDF requested an opportunity to discuss a more reasonable production schedule.

52.     On March 18, 2026, DOC responded and reiterated that DOC was unable to respond within the 20-day statutory window due to "unusual circumstances."

53.     To date, DOC has failed to provide any records responsive to or otherwise make a determination on DDF's request DOC-OS-2026-001004.

### *DDF's Feb. 10, 2026, FOIA Request to DOS, DHS, and USCIS*

54.     On February 10, 2026, DDF filed a FOIA request with DHS, DOS, and USCIS. Specifically, DDF requested the following records:

1.  All documents constituting or containing final memoranda, approvals, or legal analyses approving, authorizing, or implementing the Gold Card Visa Program, including, but not limited to, final interagency memoranda or approvals.
2.  All documents relied on to create or implement the Gold Card Visa Program.
3.  All documents containing or describing final policies, guidance, instructions, checklists, or procedures that establish or govern application intake, vetting, review, or visa issuance or denial under the Gold Card Visa Program, including any "Special Benefits" (as mentioned at https://trumpcard.gov/), expedited handling, or preferential treatment of applications under the program or targets for or quotas of visas granted under the program.
4.  All documents containing any form of instructions concerning the processing, approval or disapproval of applications under the Gold Card Visa Program.
5.  All documents used in or describing training for application intake, vetting, review, or visa issuance or denial under the Gold Card Visa Program.

---

[11] U.S. Dep't of Com., FOIA Ann. Rep. (2025), https://www.commerce.gov/sites/default/files/2026-03/DOC%20FY25%20-%20FOIA%20Annual%20Report.pdf.

6. All documents identifying the offices or components assigned to work on the Gold Card Visa Program or describing any directives or plans allocating personnel or resources (including adjudicators) to application intake, vetting, adjudications, or visa issuance under the Gold Card Visa Program.

7. All final analyses, forecasts, or briefing materials assessing how the Gold Card Visa Program will affect visa availability, cut-off dates, processing backlogs, adjudication timelines, or allocation of adjudicative resources, with respect to the EB-1 and EB-2 preference categories, national interest waivers, or immigrant visas.

8. All public-facing communications (e.g., press releases, web content, FAQs) about the Gold Card Visa Program.

9. All documents describing in any way the number or types of applications under the Gold Card Visa Program.

10. To the extent applications have been received under the Gold Card Visa Program, documents that reflect the standard workflow and decision criteria for processing such applications (including templates, standard notices, routing instructions, and decision rubrics), with any personally identifying information redacted.

11. All reports or data exports (weekly or monthly, if maintained) reflecting: (1) number of applications received under the Gold Card Program; (ii) the number of applications processed, approved, or denied; (iii) the mean or median processing time; and (iv) the number of applications receiving expedited or priority treatment.

12. All documents that identify or quantify any gifts or payments received or recorded in connection with the Gold Card Visa Program.

13. All documents relied on to set or considered in any way in the setting of the processing fee for applicants under the Gold Card Visa Program at $15,000.

14. All final documents describing the authority for setting and processes used to set the processing fee for the Gold Card Visa Program at $15,000, including any cost or fee justification.

15. All documents containing or reflecting final approval of or authorization to use USCIS Form I-140G and its instructions, including any documents submitted to the Office of Management and Budget, any documents concerning compliance with the Paperwork Reduction Act, and any final guidance or instructions to adjudicators and other agency personnel on how Form I-140G should be used to process applications under the Gold Card Visa Program.

16. All documents containing or describing communications with any individual or entity not an officer or employee of the United States concerning the Gold Card Visa Program, but excluding application materials from individual applicants and subsequent communication with those applicants.

14

17. All documents describing any plans to or consideration of ending the EB-5 program and replacing it with the Gold Card Visa Program.

55. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A), 6 C.F.R. § 5.11, and 22 C.F.R. § 171.16.

56. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E), 6 C.F.R. § 5.5, and 22 C.F.R. § 171.12, all of which require the agency to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Pursuant to FOIA, DHS, and DOS requirements, DDF included the requisite, certified statement articulating the basis for its request for expedited processing.

### State Department Request F-2026-10969

57. On February 18, 2026, DOS acknowledged receipt of the February 10 request, assigned the tracking number F-2026-10969, and assigned the request to its complex processing track (the "February 18 Letter").

58. DOS's acknowledgment also invoked the "unusual circumstances" exception to the 20-working day statutory deadline on the grounds that the FOIA office would "need to search for and collect requested records from other Department offices or Foreign Service posts." It did not set forth a date on which a determination was expected to be dispatched.

59. DOS's acknowledgment also denied DDF's requests for expedited processing and a fee waiver. Specifically, DOS determined that DDF's "request does not meet the public interest standard set forth in § 22 CFR 171.16(j)(2)(ii)." DOS also decided that DDF falls within the "news media" requester fee category, exempting it from being charged search or review fees. DOS did not request any fees from DDF before processing DDF's FOIA request and did not state whether it believed any duplication fees were likely to be incurred.

15

60.    On March 2, 2026, DDF filed via email an administrative appeal of the fee waiver denial.

61.    On March 3, 2026, DOS emailed DDF to acknowledge receipt of the administrative appeal and provided a tracking number of A-2026-00214.

62.    On March 13, 2026, DDF sent a message to the DOS email address provided in the February 18 Letter seeking an estimated date for production of records responsive to DDF's FOIA request. In the message, DDF requested that DOS call DDF's representative and provided a phone number. That same day, DDF's representative called the DOS phone number listed on the February 18 Letter and left a voicemail requesting a return call concerning the FOIA request.

63.    To date, DDF has received no reply to its March 13, 2026 email or phone call.

64.    To date, DOS has failed to provide any records responsive to or otherwise make a determination on DDF's FOIA request.

### *DHS Request 2026-HQFO-01801 & USCIS Request COW2026002062*

65.    FOIA requests seeking the same materials described in ¶ 54 were sent to Defendants DHS and USCIS.

66.    Beginning January 22, 2026, Defendant DHS ceased accepting requests via email or physical mail, and began use of its new online tool, the SecureRelease Portal, which provides information about requests to the person who submits them on demand.

67.    DDF submitted its February 10, 2026 request through the SecureRelease Portal. To date, the only available information about the status of its FOIA request is that the tracking number is 2026-HQFO-01801, that it has been placed on the complex track, and that the Request Status is listed as "Initial Determination."

16

68.     To date, DHS has failed to provide any records responsive to or otherwise make a determination on DDF's FOIA request 2026-HQFO-01801.

69.     Defendant USCIS processes all FOIA requests through its "Freedom of Information Act (FOIA) Immigration Records System (FIRST)." This system also provides information about requests to the person who submits them on demand.

70.     DDF submitted its February 10, 2026 FOIA request to Defendant USCIS via its FIRST portal. To date, the only available information on that platform about the status of its FOIA request is that the tracking number is COW2026002062, the place in the queue is 501 of 513 pending requests, and the request is listed as "In Process." An estimated date of completion was initially listed as March 19, 2026, but between April 2, 2026, and April 10, 2026, that estimated date was removed from the portal. No updated estimate has been provided.

71.     On April 3, 2026, USCIS sent a letter to DDF denying its request for expedited processing and granting its request for a fee waiver. The letter also explained that USCIS would take a 10-day extension of its deadline due to "unusual circumstances." Specifically, USCIS stated:

> Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Additionally, due to the scope and nature of your request, USCIS will need to locate, compile, and review responsive records from multiple offices, both at headquarters and in the field. USCIS may also need to consult with another agency or other component of the Department of Homeland Security that have a substantial interest in the responsive information. Due to these unusual circumstances, USCIS will invoke a 10 business day extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B).

72.     The letter did not set forth a date on which a determination was expected to be dispatched, and the portal no longer displays any estimated date of completion.

73.     USCIS's initial estimated date of completion of March 19, 2026, has passed. To date, USCIS has failed to provide any records responsive to or otherwise make a determination on DDF's FOIA request COW2026002062.

### DHS Request 2026-HQFO-01812 and USCIS Request COW2026002090

74.     On February 11, 2026, DDF filed a second FOIA request with DHS and USCIS.

75.     Specifically, DDF requested the following records:

1. All documents describing the process used to create the Gold Card Visa Program.
2. All documents used in the administration of the Gold Card Visa Program.
3. All documents describing the processing, approval or disapproval of applications under the Gold Card Visa Program, not including communications with individual applicants or concerning individual applicants.
4. All documents containing or describing any form of compilation of data related to the Gold Card Visa Program.
5. All documents describing the process used to set the processing fee for applicants under the Gold Card Visa Program at $15,000.
6. All documents containing or describing communications of any kind concerning the setting of the processing fee for applicants under the Gold Card Visa Program.
7. All documents relied on to create or considered in any way in creating the website, "The Trump Gold Card is Here. Unlock life in America," https://trumpcard.gov/.
8. All documents describing the process used to create the website, "The Trump Gold Card is Here. Unlock life in America," https://trumpcard.gov/.
9. All documents containing or describing communications of any kind concerning the creation of the website, "The Trump Gold Card is Here. Unlock life in America," https://trumpcard.gov/.
10. All documents relied on to create, obtain approval to use, or considered in any way in the creation of USCIS Form I-140G or its accompanying instructions.
11. All documents describing the process used to create or obtain approval to use USCIS Form I-140G or its accompanying instructions.
12. All documents containing or describing communications of any kind concerning the creation or approval to use USCIS Form I-140G or its accompanying instructions.
13. All documents describing or in any way related to the "Special Benefits" the website ("The Trump Gold Card is Here. Unlock life in America," https://trumpcard.gov/) states will be given to applicants for a Gold Card visa.
14. All documents containing or describing any communications among or between officers or employees of the Department of Homeland Security, the United States Citizenship and Immigration Services, the Department of State, or the Department of Commerce concerning the Gold Card Visa Program.
15. All documents containing or describing any communications with any officer or employee in the Executive Office of the President concerning the Gold Card Visa

Program or any specific applicant or potential application under the Gold Card Visa Program.

16. All documents containing or describing any communications with or about a donor or potential donor to any political campaign, political action committee, or any other organization or fund associated with President Trump, members of President Trump's family, or the Republican Party that relate to the Gold Card Visa Program.

17. All documents containing or describing any communications concerning Nick[i] Minaj and the Gold Card Visa Program.

18. All documents describing the Gold Card Visa Program.

76. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11.

77. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5, which require the agency to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Pursuant to FOIA and DHS regulatory requirements, DDF included the requisite, certified statement articulating the basis for its request for expedited processing.

78. DDF submitted its February 11, 2026 request to DHS through the SecureRelease Portal. To date, the only available information about the status of its FOIA request is that the tracking number is 2026-HQFO-01812, that it has been placed on the simple processing track, and that the Request Status is listed as "Initial Determination."

79. To date, DHS has failed to provide any records responsive to or otherwise make a determination on DDF's February 11, 2026 FOIA request.

80. DDF submitted its February 11, 2026 FOIA request to Defendant USCIS via its FIRST portal. To date, the only available information on that platform about the status of its FOIA request is that the tracking number is COW2026002090, the place in the queue is 502 of 513 pending requests, and the request is listed as "In Process." An estimated date of completion was

initially listed as March 20, 2026, but between April 2, 2026, and April 10, 2026, that estimated date was removed from the portal. No updated estimate has been provided.

81.    On April 3, 2026, USCIS sent a letter to DDF denying its request for expedited processing and granting its request for a fee waiver. The letter also explained that USCIS would take a 10-day extension of its deadline due to "unusual circumstances." Specifically, USCIS stated:

> Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Additionally, due to the scope and nature of your request, USCIS will need to locate, compile, and review responsive records from multiple offices, both at headquarters and in the field. USCIS may also need to consult with another agency or other component of the Department of Homeland Security that have a substantial interest in the responsive information. Due to these unusual circumstances, USCIS will invoke a 10 business day extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B).

82.    The letter did not set forth a date on which a determination was expected to be dispatched, and the portal no longer displays any estimated date of completion.

83.    But for the index number in the header of the two letters, USCIS's correspondence regarding request COW2026002090 is identical to its correspondence regarding DDF's February 10 request COW2026002062.

84.    USCIS's initial estimated date of completion of March 20, 2026, has passed. To date, USCIS has failed to provide any records responsive to or otherwise make a determination on DDF's FOIA request COW2026002090.

**CAUSES OF ACTION**

*Violation of the Freedom of Information Act, 5 U.S.C. § 552*

*Count I: Violation of Statutory Deadline*

85.    Plaintiffs reassert and re-allege each and every allegation set forth above as if each was set forth herein.

20

86.    FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information. FOIA reflects a "profound national commitment to ensuring an open Government," and agencies must "adopt a presumption in favor of disclosure." Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

87.    FOIA requires agencies to determine within 20 working days after the receipt of any FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

88.    Agencies may only extend this time period once for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). FOIA's "unusual circumstances" provision also requires the agency to indicate "the date on which a determination is expected to be dispatched." *Id*.

89.    Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i).

<u>Colombo Hurd Request to USCIS COW2026000979</u>

90.    Twenty working days from January 6, 2026, the date Plaintiff Colombo Hurd submitted its FOIA request, was February 4, 2026.

91.    The USCIS FIRST platform lists the estimated date of completion for Colombo Hurd's FOIA request as February 12, 2026.

92.    To date, Defendant USCIS has not provided any records or otherwise made a determination in response to Colombo Hurd's FOIA request.

93.    By failing to release requested records, Defendants violated the FOIA.

94.    Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its Requests, Colombo Hurd now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

DDF FOIA Request to DOC DOC-OS-2026-001004

95.    Twenty working days from February 10, 2026, the date Plaintiff DDF submitted its request DOC-OS-2026-001004, to Defendant DOC, was March 11, 2026.

96.    Defendant DOC purported to extend its deadline to respond to DDF's FOIA Request by ten days due to unusual circumstances but did not set forth a date on which a determination was expected to be dispatched as required by 5 U.S.C. § 552(a)(6)(B)(i).

97.    Thirty working days from February 10, 2026, was March 25, 2026.

98.    To date, Defendant DOC has not provided any records or otherwise made a determination in response to DDF's FOIA request DOC-OS-2026-001004.

99.    By failing to release requested records, Defendants violated the FOIA.

100.    Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its Requests, DDF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

DDF FOIA Request to DOS F-2026-11019

101.    Twenty working days from February 10, 2026, the date Plaintiff DDF submitted its request F-2026-10969, to Defendant DOS, was March 11, 2026.

102.    Defendant DOS purported to extend its deadline to respond to DDF's FOIA Request by ten days due to unusual circumstances but did not set forth a date on which a determination was expected to be dispatched as required by 5 U.S.C. § 552(a)(6)(B)(i).

22

103.    Thirty working days from February 10, 2026, was March 25, 2026.

104.    To date, Defendant DOS has not provided any records or otherwise made a determination in response to DDF's FOIA request F-2026-10969.

105.    By failing to release requested records, Defendants violated the FOIA.

106.    Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its Requests, DDF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

DDF FOIA Requests to USCIS COW2026002062 & COW2026002090

107.    Twenty working days from February 10, 2026, the date Plaintiff DDF submitted its FOIA request COW2026002062 to Defendant USCIS, was March 11, 2026.

108.    Defendant USCIS purported to extend its deadline to respond to DDF's FOIA request COW2026002062 by ten days due to unusual circumstances on April 3, 2026, well after the initial twenty working days and a ten-day extension would have elapsed. It also did not set forth a date on which a determination was expected to be dispatched as required by 5 U.S.C. § 552(a)(6)(B)(i).

109.    Thirty working days from February 10, 2026, was March 25, 2026.

110.    To date, Defendant USCIS has not provided any records or otherwise made a determination in response to DDF's FOIA request COW2026002062.

111.    Twenty working days from February 11, 2026, the date Plaintiff DDF submitted its FOIA request COW2026002090 to Defendant USCIS, was March 12, 2026.

112.    Defendant USCIS purported to extend its deadline to respond to DDF's FOIA request COW2026002090 by ten days due to unusual circumstances on April 3, 2026, well after the initial twenty working days and a ten-day extension would have elapsed. It also did not set

forth a date on which a determination was expected to be dispatched as required by 5 U.S.C. § 552(a)(6)(B)(i).

113. Thirty working days from February 11, 2026, was March 26, 2026.

114. To date, Defendant USCIS has not provided any records or otherwise made a determination in response to DDF's FOIA request COW2026002090.

115. By failing to release requested records, Defendants violated the FOIA.

116. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its Requests, DDF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

### DDF FOIA Requests to DHS 2026-HQFO-01801 & 2026-HQFO-01812

117. Twenty working days from February 10, 2026, the date Plaintiff DDF submitted its FOIA request DHS 2026-HQFO-01801 to Defendant DHS, was March 11, 2026.

118. Twenty working days from February 11, 2026, the date Plaintiff DDF submitted its FOIA request DHS 2026-HQFO-01812 to Defendant DHS, was March 12, 2026.

119. To date, Defendant DHS has not provided any records or otherwise made a determination in response to either of DDF's FOIA requests 2026-HQFO-01801 or 2026-HQFO-01812.

120. By failing to release requested records, Defendants violated the FOIA.

121. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its Requests, DDF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

***Count II: Defendant DOS's Failure to Respond to Plaintiff DDF's Appeal A-2026-00214***

122.    Plaintiff DDF reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

123.    DDF timely appealed Defendant DOS's denial of its request for a waiver of duplication fees associated with processing its request F-2026-10969 on March 2, 2026.

124.    The statutory 20 working day limit also applies to agencies' duty to respond to an administrative appeal from an initial determination. 5 U.S.C. § 552(a)(6)(A)(ii).

125.    Twenty working days from March 2, 2026, was March 30, 2026.

126.    To date, Defendant DOS has yet to make a determination with respect to DDF's appeal A-2026-00214.

127.    By failing to grant DDF a waiver of processing fees, Defendant DOS violated the FOIA.

128.    Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its administrative appeal, DDF now turns to this Court to enforce its right to a waiver of processing fees associated with its request F-2026-10969.

***Count III: Failure to Grant Expedited Processing for Plaintiff DDF by All Defendants***

129.    Plaintiff DDF reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

130.    In its February 10 and 11, 2026, requests to Defendants DOC, DOS, DHS, and USCIS, Plaintiff DDF properly sought records within their possession, custody, and control.

131.    DDF also sought expedited processing of its FOIA requests.

132. DDF properly sought expedition from Defendants because of the urgency to inform the public about an actual or alleged government activity.

133. DDF further properly sought expedition because the subjects of the requests are matters of widespread and exceptional media interest that raise possible questions about the government's integrity which affect public confidence.

134. DDF is primarily engaged in disseminating information and has been granted full fee waivers by Defendant USCIS and "media" fee status by Defendant DOS.

135. Defendants wrongfully denied DDF's requests for expedition and have improperly failed to process DDF's requests on an expedited basis.

136. An agency's denial of a request for expedited processing or an agency's failure to respond within 10 calendar days to a request for expedited processing is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

137. By failing to grant DDF's requests for expedited processing of DDF's FOIA requests concerning matters in which there is widespread and exceptional media interest and questions about the government's integrity that affect public confidence, and concerning which there is an urgent need to inform the general public nationwide, Defendants have violated FOIA.

<u>**RELIEF SOUGHT**</u>

**WHEREFORE**, Plaintiffs respectfully request that this Court:

i.  Order Defendants to grant expedited processing of DDF's FOIA requests, and immediately and fully process those requests and disclose all non-exempt responsive documents to DDF;

ii.  Declare that DDF is entitled to the expedited processing and disclosure of the non-exempt records it has requested under FOIA;

iii. Declare that Defendants violated the statutory deadlines to respond to Colombo Hurd's and DDF's FOIA requests;

iv. Declare that Defendants wrongfully withheld requested agency documents;

v. Order Defendant DOS to grant DDF's request for a waiver of duplication fees;

vi. Provide for expeditious proceedings in this action;

vii. Issue a permanent injunction directing Defendants to disclose to Plaintiffs all wrongfully withheld documents;

viii. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E);

ix. Maintain jurisdiction over this action until Defendants are in compliance with the FOIA and every order of this Court; and

x. Grant such additional and further relief to which Plaintiffs may be entitled.

Dated:    April 13, 2026

Respectfully submitted,

*/s/ Harold Craig Becker*
Harold Craig Becker, DC Bar No. 371239
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, No. 15180
Washington, DC 20003
(202) 594-9958
craig@democracydefenders.org

SARAH S. WILSON
(pro hac vice forthcoming)
DAVID KIM
(pro hac vice forthcoming)
COLOMBO HURD PL
301 E. Pine Street #450
Orlando, Florida 32801
(407) 478-1111
swilson@colombohurd.com

27

Kevin H. Bell
DC Bar # 90015600
kevin@freeinformationgroup.com
Ginger McCall
DC Bar # 1001104
ginger@freeinformationgroup.com

FREE INFORMATION GROUP, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
(202) 946-3642

*Attorneys for Plaintiffs*